**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | | |
|---|---|---|
| TAMMY L. GOLDSTEIN, | ) | Case No. CV 04-9699-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Tammy L. Goldstein ("Plaintiff") seeks review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB").   For the reasons stated below, the Commissioner's decision shall be reversed and this action is remanded to the Commissioner for further proceedings.

**I.   Factual and Procedural Background**

Plaintiff was born on June 24, 1969. (Administrative Record ("AR") at 79).  She has some college education and work experience as a data entry clerk.  (AR at 46).

\\

1

1        Plaintiff filed an application for DIB on January 19, 1999,
2    alleging that she had been disabled and unable to work since September
3    5, 1995, due to asthma, allergies, problems with her back, neck and
4    knees, memory loss, and bipolar disorder.  (AR at 45, 79-81, 152).  The
5    Social Security Administration denied benefits initially and on
6    reconsideration.  (AR at 66-69, 72-75).

7        At Plaintiff's request, an administrative hearing was held before
8    Administrative Law Judge ("ALJ") Jan Donsbach on April 17, 2001.  (AR at
9    595-619).  Plaintiff, who was represented by counsel, testified at the
10   hearing.  (AR at 599-613).

11       On August 27, 2001, the ALJ issued a decision finding that
12   Plaintiff was not under a disability, as defined in the Social Security
13   Act.  (AR at 42-54).  The ALJ determined that Plaintiff had not engaged
14   in substantial gainful activity since the application date.  (AR at 53).
15   The ALJ FURTHER determined that Plaintiff suffers from severe
16   impairments (asthma, allergies, bilateral trochanteric bursitis, and
17   morbid obesity), but that Plaintiff did not have an impairment or
18   combination of impairments listed in or medically equal to one of the
19   listed impairments in Appendix 1, Subpart P, Regulations No. 4 ("the
20   Listings").  (AR at 46, 53).  The ALJ assessed Plaintiff with a residual
21   functional capacity to perform medium work, except for work involving
22   pulmonary irritants. (AR at 49).  The ALJ concluded that Plaintiff was
23   capable of performing her past relevant work as a data entry clerk.  (AR
24   at 53-54).

25       On October 22, 2004, the Appeals Council denied review.  (AR at 7-
26   10).  Therefore, the ALJ's decision became the final decision of the
27   Commissioner.  *Id*.  Plaintiff then commenced this action for judicial
28   review.

1      The parties filed a Joint Stipulation ("JS") of disputed issues on

2 October 26, 2005.  Plaintiff raises the following arguments:

3     1.   The ALJ erred in rejecting the opinions of

4         Plaintiff's treating and examining physicians

5         without providing specific, legitimate reasons for

6         doing so.  (Joint Stipulation at 3-8, 15-17).

7     2.   The ALJ erred in evaluating Plaintiff's severe

8         impairments.  (JS at 17-19, 22-24).

9     3.   The ALJ erred in determining that Plaintiff's

10        impairment did not meet or equal a Listed

11        impairment.  (JS at 24-25, 30-32).

12     4.   The ALJ erred in evaluating Plaintiff's residual

13        functional capacity.  (JS at 32-35, 37-39).

14     5.   The ALJ erred in finding that Plaintiff is able to

15        return to her past relevant work.  (JS at 39-40,

16        43).

17     6.   The ALJ erred in evaluating Plaintiff's subjective

18        complaints.  (JS at 43-46, 49-50).

19     7.   The ALJ failed to consider Plaintiff's impairments

20        in combination.  (JS at 50-51, 53-54).

21     8.   The ALJ erred in evaluating Plaintiff's chronic

22        fatigue syndrome.  (JS at 54-56, 59-61).

23     9.   The ALJ erred in evaluating Plaintiff's obesity.

24        (JS at 61-62, 65).

25 Plaintiff seeks remand for payment of benefits or, in the alternative,

26 remand for further development of the record. (JS at 66).  The

27 Commissioner requests that the ALJ's Decision be affirmed.  (JS at 66-

28 67).  The Joint Stipulation has been taken under submission without oral

1  argument.

2

3  **II.   <u>Standard of Review</u>**

4       Under  42  U.S.C.  §  405(g),  a  district  court  may  review  the

5  Commissioner's decision to deny benefits.  The Commissioner's or ALJ's

6  findings and decision should be upheld if they are free from legal error

7  and  are  supported  by  substantial  evidence  based  on  the  record  as  a

8  whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

9  (1971);  *Holohan  v.  Massanari*,  246  F.3d  1195,  1201  (9th  Cir.  2001).

10  Substantial evidence means such evidence as a reasonable person might

11  accept  as  adequate  to  support  a  conclusion.   *Richardson*,  402  U.S.  at

12  401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996).   It is more

13  than a scintilla, but less than a preponderance.   *Reddick*, 157 F.3d at

14  720.   To determine whether substantial evidence supports a finding, the

15  reviewing  court  "must  review  the  administrative  record  as  a  whole,

16  weighing both the evidence that supports and the evidence that detracts

17  from  the  Commissioner's  conclusion."    *Id.*    "If  the  evidence  can

18  reasonably support either affirming or reversing," the reviewing court

19  "may not substitute its judgment" for that of the Commissioner.  *Id.* at

20  720-721.

21

22  **III.   <u>Discussion</u>**

23       The step two requirement that the claimant have a severe impairment

24  is generally considered to be "a *de minimis* screening device to dispose

25  of groundless claims."   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

26  1996)(citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)(O'Connor, J.,

27  concurring)).   An impairment is severe if it significantly limits the

28  claimant's "physical or mental ability to do basic work activities."   20

1   C.F.R. §§ 404.1520(c), 404.1521(a).  An impairment is not severe if the

2   "medical evidence establishes only a slight abnormality or a combination

3   of slight abnormalities which would have no more than a minimal effect

4   on an individual's ability to work."  Social Security Regulation ("SSR")

5   85-28.  An impairment must be established by medical evidence consisting

6   of signs, symptoms, and laboratory findings, not only by the claimant's

7   statement of symptoms.   20 C.F.R. § 404.1508; *see also* SSR 85-28

8   (stating that the determination of whether an impairment is severe is

9   made based on medical considerations alone).

10       Plaintiff argues that the ALJ improperly rejected the medical

11  evidence supporting a finding of a severe mental impairment.  (JS at 17-

12  19).   The Commissioner responds that the ALJ reasonably relied on the

13  opinion of one of the consultative psychiatrists, Mohamed Fayek, M.D.

14  (JS at 19-20; AR at 588-92).  Given the *de minimis* nature of the step

15  two inquiry, the Court concludes that the ALJ's finding at step two of

16  the sequential process was not supported by substantial evidence.

17       The  records  from  Plaintiff's  treating  physicians  show  that

18  Plaintiff suffers from a severe mental impairment.  In September 1998,

19  Dr. Morong noted that Plaintiff had a depressed and anxious affect,

20  pressured speech and was hyperverbal. (AR at 326).  Dr. Morong diagnosed

21  Plaintiff with bipolar affective disorder, depression (mild), and post

22  traumatic stress disorder.  (AR at 324).  In 1999, Dr. Del Rosario also

23  diagnosed  Plaintiff  with  bipolar  disorder.    (AR  at  313,  559).

24  Plaintiff's primary care physician, Dr. Ho, repeatedly diagnosed

25  Plaintiff with bipolar disorder.  (AR at 555, 560-79).  In August 1999,

26  Dr. Hertkamp noted that Plaintiff displayed retarded psychomotor

27  activity, an anxious mood, and recent memory problems.  (AR at 554).  He

28  concluded that Plaintiff was suffering from bipolar disorder, mixed.

1   (AR at 554).

2       The opinions of examining physician Marat Pushin, M.D. and the

3   State Agency medical consultants also support a finding of a severe

4   mental impairment.   After administering a comprehensive psychiatric

5   examination in March 1999, Dr. Pushin diagnosed Plaintiff with probable

6   bipolar disorder, mixed.   (AR at 374).   Dr. Pushin also assessed

7   Plaintiff with a Global Assessment of Functioning ("GAF") score of 50[1]

8   and found that Plaintiff was "impaired" in her ability to:  understand,

9   remember and carry out complex instructions; deal with the public, co-

10  workers, and supervisors; and maintain concentration and attention for

11  two hour increments.   (AR at 374).   Dr. Pushin's assessment was

12  corroborated by that of the non-examining State Agency physicians.   (AR

13  at 388, 394, 421, 425, 427).

14      Dr. Fayek, on the other hand, was the only physician to conclude

15  that Plaintiff does not suffer from a mental impairment.  At the request

16  of the ALJ, Dr. Fayek conducted a post-hearing psychiatric examination

17  of Plaintiff in July 2001.   (AR at 51, 588-92).   In contrast to the

18  other medical experts who came in contact with Plaintiff's case, Dr.

19  Fayek found that Plaintiff does not suffer from any mental condition.

20  (AR at 592).  He assessed Plaintiff with a GAF score of 90[2] and concluded

21

22      [1]   A GAF rating of 41 to 50 indicates serious symptoms (e.g.,
    suicidal ideation, severe obsessional rituals, frequent shoplifting), or
23  any serious impairment in social, occupational, or school functioning
    (e.g., no friends, unable to keep a job).   American Psychiatric
24  Association, Diagnostic & Statistical Manual of Mental Disorders (DSM-
    IV) 34 (4th ed. rev. 2000).

25

26      [2]   A GAF score of 81 to 90 indicates absent or minimal symptoms,
    "(e.g., mild anxiety before an exam), good functioning in all areas,
27  interested and involved in a wide range of activities, socially
    effective, generally satisfied with life, no more than everyday problems
28  or concerns (e.g., an occasional argument with family members)."  DSM-IV
    at 34.

1 that Plaintiff does not have any work-related restrictions.   (AR at
2 592).

3      Although the ALJ was permitted to resolve conflicts in the medical
4 evidence, *see Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1989),
5 the ALJ did not provide specific, legitimate reasons for rejecting the
6 opinions of the numerous physicians who concluded that Plaintiff suffers
7 from a mental impairment.   *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir.
8 1996).   For example, in support of his step two determination, the ALJ
9 stated that Plaintiff's symptoms were controlled with medication.   (AR
10 at 52).   In particular, the ALJ found that Dr. Hertkamp's records showed
11 improvement with medication and eventual stability in 1999 and 2000.
12 (AR at 52).   The ALJ also noted that Plaintiff admitted that medication
13 helped with her symptoms.   (AR at 52, 604).   Contrary to the ALJ's
14 contention, Dr. Hertkamp's records reflect a waxing and waning of
15 Plaintiff's symptoms, with frequent changes in her medication regime.[3]
16 (AR at 541-52).   And, while Plaintiff acknowledged that her medications
17 provided "some" help, the step two inquiry is merely a "de minimis
18 screening device to dispose of groundless claims."   *Smolen*, 80 F.3d at
19 1290.   The ALJ also stated that Dr. Hertkamp and Dr. Arella assessed
20 Plaintiff with a GAF score of 65.   (AR at 52).   According to the ALJ,
21 this score suggests that Plaintiff suffered from only mild symptoms.
22 (AR at 52); *see* DSM-IV at 34 (a GAF score of 61 to 70 reflects "[s]ome
23 mild symptoms . . . or some difficulty in social, occupational, or
24

25
26      [3] Dr. Hertkamp's records reveal that Plaintiff had been prescribed a variety of medications, including Trazodone (anti-depressant), Risperdal (anti-psychotic), Prozac (anti-depressant), Depakote (for manic episodes), Klonopin (for panic disorders), Effexor (anti-depressant), Lithium (for manic episodes), and Zyprexa (anti-psychotic). (AR at 541-51).
27
28

1 school functioning . . . but generally functioning pretty well"). The

2 ALJ, however, misreads these doctors' reports. A closer review of the

3 record reveals that both doctors assessed Plaintiff with a range of GAF

4 scores. Dr. Arella estimated Plaintiff's GAF score to be "45[4]/65," and

5 Dr. Hertkamp assessed Plaintiff's GAF score to be 60[5] to 65. (AR at 536,

6 554). Thus, the isolated GAF score cited by the ALJ did not constitute

7 an adequate basis for rejecting the opinions of Plaintiff's physicians

8 regarding the severity of her mental impairment. *Lester*, 81 F.3d at

9 831.

10 Moreover, when determining Plaintiff's residual functional

11 capacity, the ALJ is required to consider the impact of all impairments,

12 severe or not. *See* 42 U.S.C. § 423(d)(2)(B)("In determining whether an

13 individual's . . . impairments are of sufficient medical severity that

14 such . . . could be the basis of eligibility under this section, the

15 Secretary shall consider the combined effect of all the individual's

16 impairments without regard to whether any such impairment, if considered

17 separately, would be of such severity."); 20 C.F.R. § 404.1545(e)("we

18 will consider the limiting effects of all your impairment(s), even those

19 that are not severe, in determining your residual functional capacity");

20 SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations

21 and restrictions imposed by all of an individual's impairments, even

22 those that are not 'severe.'"). Here, the ALJ did not consider

23 Plaintiff's mental impairments in his residual functional capacity

24

25 ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

[4]     *See supra* note 1.

26

[5]     A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g.,
27 flat affect and circumstantial speech, occasional panic attacks) or
moderate difficulty in social, occupational, or school functioning
28 (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

1 assessment.  (AR at 49).  Thus, even if the ALJ properly found that

2 Plaintiff's bipolar disorder and depression were not severe at step two,

3 he erred in failing to consider the limiting effects, if any, of

4 Plaintiff's mental impairment in determining her residual functional

5 capacity.  *See* SSR 96-8p (discussing requirements for mental RFC

6 determination, and stating that the mental RFC assessment used at steps

7 four and five of the sequential evaluation process requires a more

8 detailed assessment than the step two severity rating).

9        Accordingly, the ALJ's decision with respect to Plaintiff's mental

10 impairment is not substantially supported.[6]

11

12 **IV.   <u>Conclusion</u>**

13        The decision whether to remand for further proceedings is within

14 this Court's discretion.  *Harman v. Apfel*, 211 F.3d 1172, 1175-1178 (9th

15 Cir. 2000).   Where no useful purpose would be served by further

16 administrative proceedings, or where the record has been fully

17 developed, it is appropriate to exercise this discretion to direct an

18 immediate award of benefits.  *Id*. at 1179 ("the decision of whether to

19 remand for further proceedings turns upon the likely utility of such

20 proceedings"); *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

21 However, where there are outstanding issues that must be resolved before

22 a determination of disability can be made, and it is not clear from the

23

24
        [6]  As noted above, Plaintiff raises other challenges to the ALJ's
25 decision.  As the ALJ failed to properly evaluate the medical evidence
    concerning Plaintiff's mental impairment, and the record is not
26 sufficiently developed to support a determination of disability without
    further proceedings, the Court will not decide whether the remaining
27 issues raised by Plaintiff would independently require reversal.  The
    Court recommends, however, that the ALJ consider all of Plaintiff's
28 arguments when determining the merits of her case on remand.

1 record that the ALJ would be required to find the claimant disabled if

2 all the evidence were properly evaluated, remand is appropriate.

3 *Bunnell v. Barnhart*, 336 F.3d 1112, 1115-16 (9th Cir. 2003); *see also*

4 *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding case

5 for reconsideration of credibility determination).

6      Here, there are outstanding issues that must be resolved before a

7 determination of disability can be made, because it is not clear whether

8 the ALJ properly considered Plaintiff's mental impairment. *See Connett*,

9 340 F.3d at 876.  Accordingly, further proceedings are required for the

10 ALJ to consider the medical evidence concerning Plaintiff's mental

11 impairment.

12                                   **ORDER**

13      For the reasons stated above, the Court finds that the ALJ's

14 decision is not supported by substantial evidence.

15      Accordingly, it is **ORDERED** that this case be remanded to the

16 Commissioner for further proceedings consistent with this opinion.

17      **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of

18 this Order and the Judgment herein on all parties or their counsel.

19 DATED:  November 15, 2005          */S/ Marc L. Goldman*

20                                    _____

21                                    MARC L. GOLDMAN
                                     United States Magistrate Judge

22

23

24

25

26

27

28